SAMUEL CROZER

*v.*

THE PEOPLE *ex rel.* John J. Hanberg, County Collector.

*Opinion filed December 16, 1903—Rehearing denied. February 3, 1904.*

1. STATUTES—*rule as to construction of statutes.* A statute should be so construed, if possible, as to give to each word and sentence its ordinary and accepted meaning.

2. TAXES—*power of assessor and board of review to change assessment each year.* Under sections 9 and 12 of the Revenue act of 1898 (Laws of 1898, p. 40,) the assessor and board of review are without power, in the years intervening between the quadrennial general assessment of real estate, to increase or decrease the assessed value of such real estate except in case of changes in the improvements.

3. SAME—*section 14 of Revenue act of 1898 construed.* Section 14 of the Revenue act of 1898 (Laws of 1898, p. 42,) is intended to require the assessor to make effective on the assessment roll the changes in value of real estate occurring, as provided in section 12 of the same act.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

TAYLOR & MARTIN, for appellant.

JAMES H. WILKERSON, County Attorney, WILLIAM F. STRUCKMANN, and FRANK L. SHEPARD, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment and order of sale for taxes of 1902, entered against the real estate of appellant on the 28th of July, 1903, by the county court of Cook county, Illinois.

In 1899 the board of assessors in that county assessed the real estate involved in this proceeding, which is located in the town of South Chicago, in Cook county, at the sum of $86,205. The board of review in that year increased the valuation, fixing it at $90,515. The State Board of Equalization in the same year decreased the valuation, fixing it at $85,889, and upon this latter valuation taxes were extended against the property for the

years 1899, 1900 and 1901. In 1902 the board of review of Cook county notified ten owners of taxable real estate in the town of South Chicago, in that county, of a proposed increase in the assessment of all the real estate in the town of South Chicago. In pursuance of such notice, and after a hearing, a horizontal increase was made in the valuation of all the real estate in that town, and in accordance with that action the valuation of appellant's real estate was increased to and fixed at the sum of $105,000 by the board of review, and taxes were extended against this property upon this latter valuation for the year 1902. Appellant paid all the taxes extended against the property in question computed upon a valuation of $85,889, that being the valuation fixed in 1899, but declined to pay the taxes extended upon the valuation in excess of $85,889, the sum of the taxes extended on such increase in the valuation being $1125.11. The county collector applied to the county court, at the July term, 1903, for judgment against the property for these unpaid taxes, whereupon appellant appeared and filed his written objections, the substance of which was, that under the law of this State real estate was to be assessed in the year 1899 and quadrennially thereafter, and that its assessed valuation could not be increased in any of the intervening years between 1899 and 1903 unless new or added improvements were placed thereon after April 1, 1899, while the position of appellee is, that the assessing officers have the power to increase or reduce the assessment of real estate during the intervening years if the actual value of such real estate changes, from any cause whatever, during those years. The issue thus presented is the only matter for our determination, and involves a construction of certain sections of "An act for the assessment of property and providing the means therefor, and to repeal a certain act therein named," approved February 25, 1898, in force July 1, 1898. (Hurd's Stat. 1901, p. 1494.)

Section 9 of that act, so far as applicable, provides: "All real property subject to taxation under the general revenue laws of the State, including real estate becoming taxable for the first time shall be listed in the name of the owner thereof by such owners, or persons required by law, or their agents, or the officers provided by law, and assessed for the year one thousand eight hundred and ninety-nine (1899), and every fourth year thereafter, with reference to the amount owned on the first day of April in the year in which the same is assessed, including all property purchased on that day, which assessment shall be known as the general assessment, and as modified or equalized or changed as provided by law, shall be the assessment upon which taxes shall be levied and extended during the quadrennial period for which the same is made."

Section 10 requires the county clerk, before April 1, 1899, and every fourth year thereafter, to furnish duplicate lists of real estate to be assessed, and annually to make up lists, in duplicate, of real estate which is taxable and real estate which shall become taxable for the first time and which is not already listed, and lists of real estate which has been subdivided and not listed by the proper description.

Section 11 requires the assessing officers, on or before April 1 in each year, to call upon the clerk and receive the assessment books and blanks for that year.

Section 12 is as follows: "The assessor shall, before the first day of June in the year 1899 and every fourth year thereafter, in person or by his deputy, actually view and determine as near as practicable the value of each tract or lot of land listed for taxation as of the first day of April of each year, and assess the same at the value required by law, setting down the sum in proper columns prepared therefor in duplicate books furnished him. In making such assessments he shall set down his valuation of improved tracts and lots in one column, and his value

of unimproved tracts and lots in another column. He shall, also, between the first day of April and the first day of June in each intervening year, list and assess in like manner all real property which shall become taxable and which is not upon the general assessment, and also make and return a list of all new or added buildings, structures or other improvements of any kind, the value of which shall not have been previously added to or included in the valuation of the tract or lot on which such improvements have been erected or placed, specifying the tract or lot on which each of said improvements has been erected or placed, the kind of improvement and the value which, in his opinion has been added to such tract or lot by the erection thereof; and in case of the destruction or injury by fire, flood, cyclone, storm or otherwise, or removal of any structures of any kind, or of the destruction of or any injury to orchard, timber, ornamental trees or groves, the value of which shall have been included in any former valuation of the tract or lot on which the same stood, the assessor shall determine as near as practicable how much the value of such tract or lot has been diminished in consequence of such destruction or injury, and make return thereof. And in case any assessor shall fail or neglect so to do, then the supervisor of assessment shall, in the case of such new or added improvements, assess the same according to the assessment of the same property in the general assessment, and in the case of such destruction shall abate from the assessment of the tracts or lots so damaged or lessened the proper proportion thereof, estimated according to the same principles; in counties containing 125,000 or more inhabitants such books shall be made up by townships."

Section 13 provides that the assessor shall, from time to time, make such alterations in the description of real estate as may be necessary, and where it has been subdivided since making the general assessment, shall change the descriptions to correspond with the subdivisions and

properly distribute the assessment according to the new descriptions, and in case of a vacation of a subdivision shall make re-adjustment of the assessment accordingly.

Section 14 of the act is as follows: "On or before the first day of June in each year, other than the year of the general assessment, the assessor shall determine the amount, in his opinion, of any change in the value of any tracts or lots or lands, if any such change has taken place and is not already entered in the assessment books, determining such change in value as of the first day of April of that year, and add to or deduct from the assessment accordingly, setting down the amount of such change in a proper column in the assessment books."

Section 34 of the act requires the board of review to meet each year for the purpose of revising the assessment of property, and authorizes them to revise the entire assessment, or any part thereof, of any tax-payer.

Section 38 of the act authorizes and requires the board of review, in counties containing 125,000 or more inhabitants, to meet from time to time, and whenever necessary, to consider and act upon complaints, and to further revise the assessment of real property as may be just and necessary.

By section 35 this board is given full power over the assessment of any individual or corporation, and has full power over the assessment, and may do anything in regard thereto that the assessors might and could originally have done, and is further authorized to equalize the entire assessment of real or personal property by increasing or reducing the amount thereof in any township or any portion of the county as may in their opinion be just, upon notice to not less than ten owners of property in such portion of the county.

Section 23 provides: "In counties having a board of assessors, such board shall meet on the first Monday of June in each year for the purpose of revising the assessment of real property."

Section 25 provides: "The office of the board of assessors, the county supervisor of assessments and the county assessor shall be open all the year during business hours to hear or receive complaints or suggestions that real property has not been assessed at proper valuation."

No improvements of any kind had been placed upon the real estate involved since April 1, 1899.

It is argued on behalf of appellee that section 14 authorizes the assessor to re-assess, in any year intervening the years of the general assessment, any real property the value of which shall have changed since the last general assessment, and it is urged that the language of section 23 providing for the revision of the assessment of real property each year, and the provision that the office of the board of assessors shall be open · throughout the year to receive complaints that real property has not been assessed at a proper valuation, when taken in connection with the language contained in section 9, to the effect that the general assessment, *as modified or equalized or changed, as provided by law,* shall be the assessment upon which taxes shall be extended during the quadrennial period, warrants the conclusion that such was the legislative intent, and that the modifications or changes contemplated by the language above italicized might extend to a re-assessment of all the real estate in the county, without any reference to any change in the condition of the improvements, orchards, etc., thereon; and it is also said that the provision authorizing the board of review to meet, from time to time, to further revise the assessment of real property, as found in section 38, lends support to this view.

It is a cardinal rule of construction that a statute should be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant, but that it shall be so construed, if possible, that every sentence and word shall be given its ordinary meaning and acceptation. (*Decker* v. *Hughes*, 68 Ill. 33;

*Thompson* v. *Bulson,* 78 id. 277; *Perteet* v. *People,* 65 id. 230.)
In the last case the following language from Lord Coke
is quoted: "The good expositor makes every sentence
have its operation; gives effect to every word; will not
construe it so that anything shall be vain or superfluous,
but so expressed that one part of the act may agree with
the other and all may stand together."

We think it plain, in the first instance, that in enact-
ing section 9 the legislature had in view the fact that the
values of real estate, taking the entire State into consid-
eration, as a general proposition, do not change greatly
throughout a period of four years, or that if considerable
changes do occur, they are changes common throughout
a considerable extent of territory, so that no particular
injustice could be anticipated to any tax-payer or body
of tax-payers as a result of extending the taxes for four
consecutive years upon the one general assessment. The
twelfth section provides for the making of lists by the
assessor showing the value which has been added to the
various tracts of real estate by new or added improve-
ments, and the amount of the diminution that has oc-
curred in the value of the various tracts on account of
the destruction of or injury to the improvements or trees
or groves thereon, or by the removal of structures of any
kind therefrom. That section, in itself, does not provide
for any increase or decrease in the assessment. The only
authority found for making a change in the valuations by
the assessor is contained in section 14, which directs him
to "determine the amount in his opinion of any change in
the value" of any tract of land, and to add to or deduct
from the assessment accordingly. Without this provision
in section 14 the provision in section 12 would be nuga-
tory, but if the provision in section 14 has the meaning
contended for by appellee, and authorizes a re-assess-
ment of any property whenever its value changes, then
the provision contained in section 12 authorizing and
directing the assessor to make the list, therein showing

an increase or decrease in value on account of a change
in the condition of the improvements or orchards, etc.,
would be entirely meaningless, superfluous and useless,
and would have no effect whatever, because by section 14,
in the view of appellee, the assessor is required to re-
assess all property where there has been any change in
its value from any cause whatsoever, and if the law re-
quires him to do this, what purpose could be served by
providing in section 12 that he should make a list show-
ing changes in the value of part of the real estate only?

In our judgment section 14 was intended only for the
purpose of requiring the assessor to make effective on
the assessment roll the changes in value shown by the
information gathered by him in accordance with the pro-
visions of section 12.    To hold otherwise would require
us to disregard entirely that portion of section 12 provid-
ing for the making of such lists showing the changes in
the value of the improvements, orchards, etc., on certain
real estate.

It is to be observed, however, that in the intervening
years it is the duty of the assessor to assess real estate
which shall become taxable that year for the first time,
and to assess real estate which is taxable but which is
not already upon the assessment roll, and to distribute
the assessed value of a tract that has been subdivided,
among the subdivisions thereof, and to consolidate the
assessments where a subdivision has been vacated, and
it is to such powers and duties as these, including the
duty to change the valuation where made necessary by
changes in the improvements, orchards, etc., that the au-
thority given the board of assessors to revise the assess-
ment of real property and to hear complaints concerning
the assessment of real estate in the years intervening
the years of the general assessment must be referred,
and likewise the power given the board of review to in-
crease or reduce the entire assessment of real property,
and the power from time to time, and whenever neces-

sary, to consider complaints and further revise the assessment of real property, so far as such intervening years are concerned, gives power only over such assessments as we have hereinabove held the assessor has the power to make in such years. The language in section 9 providing for a modification or change of the general assessment cannot be said, with reason, to contemplate any particular change or modification if considered in connection with that section alone, and when read with the sections which follow, it may as well be argued that the words of section 9 contemplate only such changes and modifications as are within the terms of sections 12 and 13, as that they contemplate a re-assessment of any or all the real estate on the assessment roll. Section 14 cannot be held to authorize the assessor to make any increase or decrease in the valuation of any real estate during any year intervening the general assessments, except such increase or decrease as is anticipated by section 12 of the act.

Putting this construction on this statute makes each and every part thereof effective. Where the powers given the board of review and the board of assessors is general, as here, it was intended by the legislature to make such provisions broad enough to cover their duties both in the years of the general assessment and in the intervening years, and, so far as the intervening years are concerned, these powers are limited by the sections which precede, in the manner we have above indicated.

It is suggested that the purpose in providing for quadrennial assessments was to save the expense of a new assessment of all the real estate, which, it is said, in a county like Cook would be considerable. If this argument proves anything it proves too much. If section 14 authorizes the assessor to change the valuation of all tracts the actual values of which have changed, it necessarily also requires him to ascertain the present value of each and every tract, for the purpose of determining

whether any change should be made in its valuation. We think it fair to conclude that the most expensive portion of the work of making a new assessment, and the one requiring the greatest skill and care, is the ascertainment of the value of the property. This portion of the work, so far as real estate is concerned, by appellee's argument must be done each year, and on the same theory we would be required to hold that the legislature provided for a general quadrennial assessment for the sole purpose of saving the comparatively trifling expense of re-writing the assessment roll each year.

Reliance is also placed upon section 1 of article 9 of the constitution, which provides that each person and corporation shall pay a tax in proportion to the value of his, her or its property, and it is said that this requirement is not complied with where quadrennial assessments, only, are provided for and where the law requires an annual extension of the tax, because in the intervening years changes in the value of various tracts of real estate, aside from those anticipated by section 12 of the act, will occur. Absolute and mathematical uniformity cannot exist. By our present system, taxes are paid for each year. The legislature fixes an arbitrary date (April 1) in that year as the date when the property shall be taken. On the succeeding day the real estate of one man, of great value on April 1, may, by fire or other calamity, be made worthless and so remain until December 31, while the property of his neighbor may continue throughout the year of the same value as on April 1, and he who has sustained loss is thus compelled to pay taxes for an entire year on a valuation much greater than the property had throughout the year. The only method by which taxation could be made exactly and absolutely uniform and in proportion to the value of the property would be by ascertaining its value throughout the entire year and fixing its assessed value accordingly. This would be impracticable, as it would require the assessor

to assess the property on each and every day of the year and to take an average of the various assessments. If the taxes for one year may be extended upon the valuation of the property fixed on a certain day, why may not the taxes for a longer period be also extended upon that valuation if that period be not unreasonable in length? And where the property assessed is real estate, four years cannot be deemed unreasonable. The constitution does not require the General Assembly to cause taxes to be levied each year. All that it is required to do is to provide such revenue as may be needful, by levying a tax by valuation, and for aught that appears it might make the levy but once in four years, making the tax payable in annual installments, or otherwise, as it saw fit, which would result, as now, in the extension of the tax for a four-year period upon one and the same assessment.

We therefore hold that the assessor and the board of review are without power, in the years intervening the years of the general assessment, to increase the assessed valuation of real estate, except in instances where new or added buildings, structures or other improvements of some kind shall have been placed upon the real estate in question after April 1 of the year of the general assessment, and are without power to decrease the valuation during the intervening years except where the value of the real estate has been diminished after April 1 of the year of the general assessment by the destruction or injury by fire, flood, cyclone, storm or otherwise, or removal, of any structures of any kind, or by the destruction of or injury to orchard, timber, ornamental trees or groves.

The judgment of the county court will be reversed and the cause remanded to that court, with directions to the county court to enter a judgment sustaining the objections filed by the objector in that court.

*Reversed and remanded, with directions.*