(No. 11726.—Affirmed; No. 11727.—Reversed in part.)

THE PEOPLE *ex rel.* Fred Warning, County Collector, Appellee, *vs.* THE ST. LOUIS BRIDGE COMPANY, Appellant.—Same Appellee *vs.* THE WIGGINS FERRY COMPANY, Appellant.

*Opinion filed December 19, 1917.*

1. TAXES—*the board of review may in any year change the assessment of real property.* Under amended section 35 of the act of 1898, for the assessment of property for taxation, the board of review has power in any year, whether it is the year of the quadrennial assessment or not, to change the assessment of real property as made in the quadrennial year when it does not represent a ·fair valuation of the property assessed, although there has ·been no improvement or other change in the physical condition of the property. (*Crozer* v. *People,* 206 Ill. 464, explained; *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 230 id. 61, overruled.)

2. SAME—*amended section 35 of act of 1898, for assessment of property, applies to all counties.* Except where some restriction appears in the act itself, amended section 35 of the act of 1898, for the assessment of property for taxation, applies to all counties in the State.

3. SAME—*notice to owner is essential·to change in assessment of property.* Notice to the owner is necessary before any change can be made in an assessment of property once made.

4. SAME—*the board of review is not required to list valuations in revising total assessment.* Under amended section 35 of· the act of 1898, for the assessment of property, the board of review, in revising assessments, is not required to enter the value of the lands and lots and the improvements in separate columns, as is required of the township assessor by section 14. (*People* v. *St. Louis Bridge Co.* 268 Ill. 477, distinguished.)

APPEAL from the County Court of St. Clair county; the Hon. JOSEPH B. MESSICK, Judge, presiding.

T. M. PIERCE, and KRAMER, KRAMER & CAMPBELL, for appellants.

HUBERT E. SCHAUMLEFFEL, State's Attorney, (D. J. SULLIVAN, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

These appeals are from judgments for taxes rendered by the county court of St. Clair county against the property of the appellants, consisting in the case of the St. Louis Bridge Company of the east half of a bridge across the Mississippi river and the approach thereto, and in the case of the Wiggins Ferry Company of lots in the city of East St. Louis. The principal question in the two cases is the same and the cases were argued and will be considered together. That question is, does the board of review in counties of less than 125,000 population have the power, in any year other than the year of the quadrennial assessment of real property, to revise and change the assessment made in the quadrennial year and revised by the board of review in that year where there has been no improvement or other change in the physical condition of the property?

In 1915, the year of the quadrennial assessment, the local assessor for the town of East St. Louis assessed the bridge of the St. Louis Bridge Company and its approach at the full value of $3,500,001, making the assessed value $1,166,667. Upon the complaint of the bridge company the board of review reduced the assessment to $2,500,005 full value, $833,335 assessed value, and upon the assessment so reduced the taxes for the year 1915 were extended and paid. In 1916 the State's attorney of St. Clair county filed a complaint before the board of review that the assessment as made by the board of review in 1915 was too low and asked that it be increased. The board of review notified the bridge company that the complaint had been filed and would be heard August 2, 1916. At that time the bridge company appeared and objected to the authority of the board of review to revise the assessment, but the board, disregarding the objection, considered the complaint and raised the assessment of the bridge and approach, finding the full value of the property to be $3,150,000, its assessed value $1,050,000,

and the taxes for the year 1916 were extended upon this increased assessment. The bridge company paid the amount of the taxes upon the assessment of 1915 but refused to pay the taxes in excess of that amount, and objected to the application made for judgment against the property for the excessive amount on the ground that the board of review had no authority to revise the assessment and that the revision of the assessment was so arbitrarily made as to be fraudulent.

Section 9 of the act of 1898 for the assessment of property provides for the assessment of all real property in the year 1899 and every four years thereafter, to be known as the general assessment, and to be the assessment on which, as modified or equalized or changed as provided by law, taxes shall be levied and extended during the quadrennial period. This assessment is to be made by the local assessor, and in each intervening year he is required by section 12 to list and assess all real property which shall become taxable and is not upon the general assessment, and also to make and return a list of all new or added buildings, structures or other improvements the value of which shall not have been previously added to or included in the valuation of the tract or lot on which such improvements have been erected or placed, specifying the tract or lot on which such improvements have been erected or placed at the time of the improvement and the value added to such tract or lot by the improvement, and in case of the destruction or removal of any structures, or injury to orchard, timber, ornamental trees or groves, the value of which shall have been included in any former valuation, to determine how much the value of the tract or lot has been diminished in consequence of such destruction or injury and make return thereof. By section 14 as it was passed in 1898 the assessor was required, on or before the first day of June in each year other than that of the general assessment, to determine the amount, in his opinion, of any change in the value of any tracts or lots

or lands, if any such change had taken place and not been already entered on the assessment books, determining such change in value as of the first day of April of that year, and to add to or deduct from the assessment accordingly. He was required to return the assessment books to the county supervisor of assessments. In counties under township organization of less than 125,000 inhabitants the county treasurer is made supervisor of assessments in his county, and by section 26 is authorized to make changes in the assessment of property in such counties. In such counties section 30 provides for the creation of a board of review to review the assessments made by the county supervisor of assessments. Section 35 as originally passed provided that the board of review shall—

"*First*—Assess all property subject to assessment which shall not have been assessed by the assessors. The board of review may make such alterations in the description of real or personal property as it shall deem necessary.

"*Second*—On complaint in writing of any person or corporation that his or its property has been assessed too high, they shall review the assessment and correct the same, as shall appear to be just: *Provided,* such complaint shall have been made on or before the first Monday of August. The board also, upon its own motion, may increase, reduce or otherwise adjust the assessment of any individual or corporation, and shall have full power over the assessment of any individual or corporation, and shall have full power over the assessment and may do anything in regard thereto that the assessors might and could originally have done, but no assessment shall be increased until the person or corporation to be affected shall have been notified and given an opportunity to be heard except as hereinafter provided." * * *

Before any amendment to this act material to the controversy here, the case of *Crozer* v. *People,* 206 Ill. 464, arose. In that case real estate had been assessed in the general assessment of 1899 and taxes had been extended

against the property for the years 1899, 1900 and 1901. In 1902 the board of review increased the assessment, and the land owner, who had paid the taxes upon the valuation of 1899, objected to those extended on the increased valuation. It was held that the authority given by section 14 to the assessor to add to or deduct from the assessment any change in the value of any tracts or lots of any real estate was intended only to require the assessor to make effective on the assessment roll the changes in value shown by the information gathered by him in accordance with the provisions of section 12; that he was without power, in the years intervening the general assessments, to increase the assessed valuation of real estate except where new or added buildings, structures or other improvements of some kind should have been placed upon the real estate; that the authority of the board of review, under section 35, over the assessment was only to do anything in regard thereto that the assessors might have done, and that the board of review was therefore without such power to increase the assessment in the absence of any change in the improvements. This case was decided at the December term, 1903, and a rehearing was denied at the February term, 1904. At its next session the legislature amended section 14 by providing the assessor, in years other than that of the quadrennial assessment, should determine the amount of any change in the value of any tracts or lots of land by reason of any injury to, alteration in or addition to the improvements between the first of April of the preceding year and the first of April in the current year and should add to or deduct from the assessment accordingly, but that he should not in any year, except the year of the quadrennial assessment, change the valuation of any real estate or improvements, or the division thereof, except as so provided. At the same time section 35 was amended so as to provide that the board of review should in any year, whether the year of the quadrennial assessment or not—

"*First*—Assess all property subject to assessment which shall not have been assessed by the assessors. * * *

"*Second*—On complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct the same, as shall appear to be just. Such complaint to affect the assessment for the current year shall be filed on or before the first day of August: *Provided,* that if the assessment books containing the assessment complained of are not filed with the board of review by the twentieth day of July, then such complaint shall be filed on or before ten days thereafter. The board may also, of its own motion, at any time before its revision of the assessments is completed in every year, increase, reduce or otherwise adjust the assessment of any individual or corporation, on real property or personalty, making changes in the valuations thereof as may be just, and shall have full power over the assessment of any individual or corporation, and may do anything in regard thereto that it may deem necessary to make a just assessment; but no assessment shall be increased until the person or corporation to be affected shall have been notified, and given an opportunity to be heard, except as hereinafter provided; and before making any reduction in assessments of its own motion the board of review shall give notice to the board of assessors which certified the assessment, and give such assessors an opportunity to be heard thereon. All complaints of errors in assessments, real or personal, shall be in writing, and shall be filed by the complaining party with said board of review, in duplicate, and the duplicate shall be forthwith filed by the board of review with the board of assessors certifying such assessment. Complaints relating to real estate shall be classified by towns by the clerk of said board of review, and complaints relating to personal property shall be classified in such manner as the board of review shall determine, by order for that purpose, duly entered of record; all classes of complaints to be docketed numerically, each in its own

class, in the order in which they shall be presented, as near as may be, in books kept for that purpose, which books shall always be open to public inspection. Complaints relating to real estate shall be considered by towns, and complaints relating to personal property shall be heard in their order by classes, in pursuance of the order of the board heretofore mentioned, until all complaints have been heard and passed upon by the board.

"In counties of 125,000 inhabitants or over, in each year, the assessment list of real estate, as made by the board of assessors, shall be prepared in triplicate, and the three complete lists shall be certified by the assessors to the board of review when the assessment required by law is completed by them. In revising assessments in any year the board of review shall note all changes it shall make in the valuations of real estate on all of said assessment lists, and shall duly make return of one complete list to the county clerk, as required by law, and one to the board of assessors and retain the other. On the books so retained it shall note all changes made by it in the valuations of property after that date, upon the hearings provided for in this act. And in making its annual return each year to the county clerk, and to the assessor, as herein provided, it shall enter therein all such changes.

"In other counties the assessment list of real estate as made by the board of assessors or supervisor of assessments, shall be delivered, when complete, to the board of review; and after the revision thereof has been completed by the board of review, and changes noted thereon, the same shall be duly returned to the county clerk, as required by law.

"After making its annual return of the revised assessment to the board of review, as required by law, the board of assessors in counties of 125,000 inhabitants, or over, shall have the power, in any year, except the last year preceding each quadrennial assessment, to consider and correct the valuations of real property for the next succeeding annual

assessment, in the same manner, upon complaints filed from time to time, and upon complaint filed shall proceed to do so; and such changes as it shall make in any such valuations shall be noted upon the assessment list remaining in its custody, and include the same in its annual return to the county clerk and the board of review. All such changes to be reviewed by the board of review each year as in cases of any assessments.

"For the purpose of hearing and determining complaints of errors in the valuation of real property for the next succeeding assessment thereof and correcting the valuations of any such property as shall be just, after its annual return has been made, as herein provided, the board of review shall, on the first Tuesday of November and the first Tuesday of each month thereafter until and including the first Tuesday of March in each year (except the year last preceding the quadrennial assessment) and at such other times as it may be necessary, hold public sessions at its board rooms, and continue such sessions from day to day until all complaints and other business have been disposed of. Complaints passed or undisposed of at any session shall be first considered at the next succeeding monthly session and past complaints shall be disposed of at each session before later complaints shall be considered. Upon any hearing of a complaint, or on a proposal for any increase originating with said board, where notice is required as herein provided, the said board shall sit together, and hear the representations of the parties interested, or their representatives, and no change shall be made in any assessment of real property unless at least a majority of said board shall concur therein; and in such case an order therefor shall be made in open session, and entered of record on the books of the board: *Provided,* that in counties of less than 125,000 inhabitants monthly sessions of the board of review shall not be required."

This amendment in express terms provided for the exercise of the powers of the boards of review in any year, whether that of the quadrennial assessment or not, and, omitting all reference to what the assessors might or could originally have done, provided that the board may, "at any time before its revision of the assessments is completed in every year, increase, reduce or otherwise adjust the assessment of any individual or corporation, on real property or personalty, making changes in the valuations thereof as may be just, and shall have full power over the assessment of any individual or corporation, and may do anything in regard thereto that it may deem necessary to make a just assessment." Under this language the board of review may, in any year when an assessment does not represent a fair valuation of the property assessed, increase or reduce it so as to make a just assessment. The bridge company insists, however, that the powers given to the board of review by this section are confined to the assessment of omitted property and the revision of assessments in counties of 125,000 inhabitants or more and a board of assessors. Certain parts of the section are restricted in terms to counties of 125,000 inhabitants or over, one paragraph in regard to the assessment list of real estate is restricted to other counties, but the language of other parts is unrestricted and applies to the boards of review in all counties.

Our attention is called to the fact that the board of review is required, before reducing any assessment, to give notice to the board of assessors which certified it and to give the assessors an opportunity to be heard, and that all complaints of errors in assessment must be filed with the board of review in duplicate and the duplicate filed by the board of review with the board of assessors which certified the assessment. Since there is no board of assessors in counties having less than 125,000 population, it is argued from these requirements that the section does not apply to such counties. There is also a provision for monthly meet-

ings of the board of review in each year except that preceding the quadrennial assessment, on the first Tuesday of each month from November to March, inclusive, for the purpose of hearing and determining complaints of errors in the valuation of real property for the next succeeding assessment and correcting the valuations of such property as shall be just after its annual return has been made, but it is provided that in counties of less than 125,000 inhabitants monthly sessions of the board of review shall not be required. It is evident that the legislature, in amending section 35, had in view the powers of boards of review in all the counties of the State, and endeavored to differentiate, where the circumstances were thought to require it, between counties of less than 125,000 population and those of 125,-000 or over. Except where some restriction appears in the act itself it applies to all counties. The requirement of notice to the board of assessors can apply only in a county having a board of assessors. The failure to limit it to counties of 125,000 population or more was manifestly an oversight. A like inadvertence appears in the requirement, in counties other than those having 125,000 inhabitants or over, that the assessment list of real estate as made by the board of assessors or supervisor of assessments shall be delivered, when complete, to the board of review, though there is no board of assessors in such counties. These are, however, immaterial errors, which do not affect the construction of the act or prevent its application, in accordance with the legislative intention, throughout the State.

The case of *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 230 Ill. 61, arose and was decided after the amendment of section 35 in 1905, and it was there held, on the authority of *Crozer* v. *People, supra,* that the board of review was without authority, in the years intervening the years of the general assessments, to increase the assessed value of real estate except where improvements had been placed upon the real estate after April 1 of the year of the

general assessment. That case involved the action of the board of review of Franklin county in 1905. Other objections were filed and other questions were argued, the *Crozer case* was cited but not the amendment of sections 14 and 35, and no mention was made of the increased powers of the board of review. No reference was made in the argument to the then recent amendment of section 35, no authority was claimed under that amendment and the case was submitted and decided without reference to it, following *Crozer* v. *People, supra,* and the section before its amendment. So far as it concerns the power of the board of review that case is overruled.

It is argued that the assessment of the bridge and approach was not the result of the exercise of judgment by the board of review but was so arbitrarily made as to amount to no assessment at all. The evidence in this record shows that evidence was heard by the board of review as to the value of the property, and three witnesses testified to a value of from $1,850,000 to $2,500,000. It does not appear what other evidence, if any, was heard, and we cannot say from the record that the assessment was not a fair valuation.

The case of the Wiggins Ferry Company is similar in all respects to that of the St. Louis Bridge Company so far as the revision of its assessment is concerned, except that the ferry company claims that as to a part of its property no notice was given it by the board of review of its intention to change the assessment. The objector produced in evidence all the notices served upon it, and they refer only to lot 1-A, lot 1-B, lot 20-A and lot 35 in the division of the vacant ferry lands of East St. Louis. Notice to the owner is necessary before any change in an assessment of his property once made. (*People* v. *St. Louis Bridge Co.* 268 Ill. 477.) It is insisted for the appellee that notice was waived by the ferry company appearing before the board and objecting to the increase, but this contention is not borne out by the evidence.

It is further contended for the appellee that the local assessor in 1915 assessed the various lots, placing the full value of the lots, the value of the improvements, the total full value and the total assessed value in separate columns, as required by the statute; that the board of review in 1915 did not change the value of the lots or the improvements but only the total full value and the assessed value, and that the action of the board of review was therefore void and left the assessment as made by the assessor. This assessment was copied again on the book by the assessor of 1916, and the amounts were the same as the valuation of the board of review in 1916. It is claimed that the action of the board of review in 1915 left the original assessment made by the assessor in that year in force; that it continued to be the assessment of 1916 and was not affected by the action of the board of review. Section 14 of the act of 1898 provides that the value of lands and lots shall be separately fixed and set down in separate columns in the assessor's books. This section refers to the assessor and not to the board of review. Section 35, which provides for the revision of the assessment by the boards of review, contains no such requirement.

We are referred to the case of *People* v. *St. Louis Bridge Co. supra,* where it was held that the supervisor of assessments, in altering an assessment, must set down his valuations as the township assessor would. This was based upon the language of section 26, which provides that "the supervisor of assessments shall assess, make such changes or alterations in the assessment of property as though originally made, and in making such changes in valuation as returned by the township assessor such changes shall be noted in a column provided therefor, and no change shall be made in the original figures." It was held that the assessment and changes of the supervisor of assessments being required to be "as though originally made," must be made in the same way as the township assessor would make them. Section 35

contains no such requirement in regard to assessments and changes made by the board of review, and the act of that board in revising the assessment of 1915 was not void.

The judgment in the case of the St. Louis Bridge Company will be affirmed, and the judgment in the case of the Wiggins Ferry Company will be affirmed as to lots 1-A, 1-B, 20-A and 35 in the division of the vacant ferry lands of East St. Louis and reversed as to the other lots.

*Judgment in No. 11726 affirmed.*
*Judgment in No. 11727 reversed in part.*