(No. 24218.—)

THE PEOPLE *ex rel.* Joseph L. Gill, County Collector, Appellee, *vs.* HYMAN JASTROMB, Appellant.

*Opinion filed October 15, 1937—Rehearing denied Dec. 9, 1937.*

BYRON C. SHARPE, (ROBERT S. CUSHMAN, of counsel,) for appellant.

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, PHILIP H. TREACY, MANUEL E. COWEN, WILLIAM T. CRILLY, and JOHN C. CONNERY, of counsel,) for appellee.

MACLAY HOYNE, (R. A. BIERDEMANN, of counsel,) for Emmett Whealan *et al. amici curiæ.*

Mr. JUSTICE ORR delivered the opinion of the court:

The sole question raised by this direct appeal from the county court of Cook county is one of law, as follows: "Does the board of appeals in counties of 250,000 or more inhabitants have the right, in every year of the quadrennial assessment, to exercise its powers of review and revision for under-assessment and over-assessment without limitation as to physical changes and factual errors?" If such power

exists the judgment must be reversed, otherwise, it must be affirmed. A solution of this question requires a construction of the Revenue act of 1898, as amended, and a consideration of certain decisions of this court. The revenue is involved.

The facts are not in dispute. The county court entered a judgment against certain lands in Cook county for a balance of unpaid general taxes for the year 1934 and ordered a sale thereof to pay the taxes. The county collector made his *prima facie* case as to the unpaid delinquent taxes. His tax warrant books and delinquent list set forth the sum of $2610 as the 1934 assessed value of the real estate in question. The 1934 assessment roll listing the assessment at $2610 was certified directly to the county clerk by the county assessor before revision and certification by the board of appeals, and the taxes were extended on this amount by the county clerk. The property owner, Jastromb, paid, under protest, a total of $136.22 in two installments, and on November 19, 1935, filed his complaint against the assessment before the board of appeals. After notice to the county assessor and Jastromb, and after a hearing, the board of appeals reduced the assessed value of the improvements on the property to $1416, stating that the manner in which the assessor had made the assessment was erroneous, and delivered to the assessor the statement and order of revision. The board of appeals ordered the assessor to file with the county clerk the certificate, in duplicate, showing the corrected assessment as revised by the board of appeals, but this the assessor refused to do. The assessor likewise failed and refused to obey the order of the board of appeals directing him to note the changes in valuation on the duplicate assessment lists for 1934, and thereupon the board of appeals caused such changes in valuation to be made on each of the two 1934 assessment lists which had been certified to the board of appeals. The county clerk, not having received from the assessor the certificates in

duplicate showing the assessment as corrected by the board of appeals, did not compute the amount of taxes chargeable against the revised assessment nor enter the same upon each of the certificates and file them with the county collector. The latter, in turn, not having the certificates filed with him, did not note upon his warrant the revised amount of taxes but proceeded to collect the taxes as originally extended by the county clerk, by means of this application to the county court for judgment and sale of the property. The 1934 assessment constitutes the assessment roll for the last year of the quadrennial period, and the basis for the revision of the assessment ordered by the board of appeals was not physical change. In overruling the objections of Jastromb, and in entering judgment against the property, the county court held that the board of appeals was without authority to revise the assessment on the ground of over-assessment in any year except the first year of the quadrennial period, in the absence of physical changes in the property or factual errors.

Section 9 of the Revenue act of 1898 provided that all real property subject to taxation should be assessed for the year 1899 and every fourth year thereafter, which assessment should be known as the general assessment and, as modified or equalized or changed as required by law, should be the assessment upon which taxes should be levied and extended during the quadrennial period for which the same was made. Section 12 required that the assessor should, before June 1, 1899, and every fourth year thereafter, actually view and determine the value of and assess each tract or parcel as of April 1 of such year, and between April 1 and June 1 in each intervening year assess all real property liable and not included in the general assessment, and make and return a list of all new buildings or improvements, the value of which had not been previously added to or included in the valuation of the tract or lot on which such improvement had been erected or placed. In case of

destruction, or injury by fire, etc., or removal of any structure of any kind, or of the destruction of or injury to orchard, timber, etc., the value of which had been included in any former valuation of the tract or lot on which the same stood, the assessor should determine how much the value of such tract or lot had been diminished in consequence thereof. By section 14 it was provided that on or before June 1 of each year, other than the year of the general assessment, the assessor should determine the amount of any change in the value of any tracts or lots, if any such change had taken place and was not already entered in the assessment books, and add to or detract from the assessment accordingly. Section 24 provided that in counties having a board of assessors such board should meet in June of each year for the purpose of revising and correcting the assessment of real property, as should appear to be just, either on its own motion or upon application by any tax-payer. Sections 30, 31 and 32 created a board of review in each county. Section 34 required the board of review to meet each year for the purpose of revising the assessment of property, and authorized the board of review, either on its own motion or upon application by any tax-payer, to revise and correct the entire assessment, or any part thereof, of any tax-payer, as to the board should appear to be just.

By section 35 it was provided that the board of review should: First, assess all property subject to assessment which should not have been assessed by the assessors; second, on complaint of a tax-payer that his property had been assessed too high, to review and correct the assessment as should appear to be just, and also, on its own motion, to increase, reduce or otherwise adjust the assessment, the board being given full power over the assessment and authorized to do anything in regard thereto that the assessors might and could originally have done, provided, that no assessment should be increased without notice to the tax-

payer and an opportunity to be heard; third, increase or reduce the entire assessment of either real or personal property, or both, if in the opinion of the board the assessment was not made upon the proper basis, or equalize the assessment by increasing or reducing the amount thereof in any township, or any portion of the county, as might, in its opinion, be just; fourth, to hear and determine claims for exemption.

The first case decided by this court after the passage of the act of 1898, construing that act as to the jurisdiction and power of the assessor or board of review to change the assessment of real estate during the years intervening the years of the quadrennial assessment, was *Crozer* v. *People,* 206 Ill. 464, decided in 1903. In that case, under the act as originally passed, the court held that the board of assessors and the board of review in Cook county were without power, in years intervening those of the general assessment, to increase the assessed valuation of real estate, except in instances where new or added buildings, structures or other improvements of some kind had been placed upon the real estate in question after April 1 of the year of the general assessment, and were without power to decrease the valuation during the intervening years except where the value of the real estate had been diminished after April 1 of the year of the general assessment by destruction, removal or injury, etc. The reasoning of the court in that case was, in short, that the provisions of section 12 were a limitation upon the general powers conferred upon assessing officers, including the board of review, to change assessments during any year intervening the years of the quadrennial assessments.

Shortly after the decision in the *Crozer case,* the legislature amended sections 14 and 35 of the act of 1898. Section 14 was amended in 1905 to provide that the amount of any change in the value to be made by the assessor in any year should be by reason of any injury to, alteration

in or addition to the improvements thereon since the first of April in the preceding year and prior to the first of April of the current year, and that the assessor should add to or deduct from the assessment accordingly, and that the assessor should not, in any year except the year of the quadrennial assessment, change the valuation of any real estate or improvements except as provided in this section. The 1905 amendments to section 35, (Laws of 1905, p. 362,) so far as here material, were: First, the powers and duties conferred by the section on the board could be exercised "in any year, whether the year of the quadrennial assessment or not;" and the provisions under "Second," as originally written, were materially changed. It was provided that "on complaint in writing that any property described in such complaint is incorrectly assessed, the board shall review the assessment, and correct the same, as shall appear to be just." A further change from the original section was to provide that such complaint in order to "affect the assessment for the current year" should be filed on or before August 1, or within ten days after the assessment book containing the assessment complained of was filed with the board of review. The original section was enlarged to provide that the board might also, of its own motion, "at any time before its revision of the assessments is completed in every year, increase, reduce, or otherwise adjust the assessment of any individual or corporation, on real property or personalty, making changes in the valuation thereof as may be just, and shall have full power over the assessment of any individual or corporation, and may do anything in regard thereto that it may deem necessary to make a just assessment." Further provisions were added requiring that, before making any reduction in assessments of its own motion, the board of review should give notice to the board of assessors which certified the assessments, and give such assessors an opportunity to be heard thereon; that all complaints be in writing and filed with the board

of review in duplicate, which in turn were to be filed with the board of assessors, assessor or supervisor of assessments certifying such assessment; that in revising assessments in any year the board of review should note all changes made by it in the valuations of real estate on all of said assessment lists. Other additions provided that, after making its annual return of the revised assessment to the board of review, the board of assessors in counties of 125,000 inhabitants, or over, should have the power, in any year except the last year preceding each quadrennial assessment, to consider and correct the valuations of real property for the next succeeding annual assessment, in the same manner, upon complaints filed from time to time, and upon complaint filed should proceed to do so; that all such changes should be reviewed by the board of review each year.

In 1907, in *People* v. *St. Louis, Alton and Terre Haute Railroad Co.* 230 Ill. 61, upon the authority of *Crozer* v. *People, supra,* without noting any change in the statute since the decision of that case, it was held that where lands were assessed in 1903 for the quadrennial period, the board of review had no authority, in 1905, to increase the assessment of those lands on account of the increase in value of the coal and mineral underlying them, by reason of a mine having been located on other land in the vicinity. However, in 1917, in *People* v. *St. Louis Bridge Co.* 281 Ill. 462, we held that under the Revenue act of 1898, as amended in 1905, the board of review had the power, in years other than those of the quadrennial assessment, to revise and change the assessment made in the quadrennial year and revised by the board of review in that year, even where there had been no improvement or other change in the physical condition of the property. We said that section 35, as amended in 1905, in express terms provided for the exercise of the powers of the board of review in any year, whether that of the quadrennial assessment or not, and,

omitting all reference to what the assessor might or could originally have done, (being the words used in the original section 35,) provided that the board may "at any time before its revision of the assessments is completed in every year, increase, reduce or otherwise adjust the assessment of any individual or corporation, on real property or personalty, making changes in the valuations thereof as may be just, and shall have full power over the assessment of any individual or corporation and may do anything in regard thereto that it may deem necessary to make a just assessment." In that case we said: "Under this language the board of review may, in any year when an assessment does not represent a fair valuation of the property assessed, increase or reduce it so as to make a just assessment." We further stated that *People* v. *St. Louis, Alton and Terre Haute Railroad Co. supra,* was decided without reference to the 1905 amendment to the act, and that case was overruled so far as it concerned the power of the board of review.

For fifteen years after the decision in *People* v. *St. Louis Bridge Co. supra,* no change was made in the Revenue act of 1898 materially affecting the question there decided. In 1932, however, numerous amendments were made to that act. Section 23 was amended to provide that in counties having a population of 250,000, or more, inhabitants, the county assessor (who by amendment at the same time was made the successor to the old board of assessors) should have authority annually to revise the assessment and correct the same as shall appear to be just. The amended section further provided that, after the signing of the affidavit required by the original section, the county assessor should have power to assess properties omitted from assessment for the current year or during any year or number of years for which such property was liable to be taxed, and for which such tax had not been paid, but only on notice and an opportunity to be heard in the manner and form required

by law, and should enter such assessment upon the assessment books. The amended section further provided that the assessor should have no power to change the assessment or alter the assessment books in any other manner or for any other purpose so as to change or affect the taxes in that year, except as ordered by the board of appeals, and that the county assessor should make all changes and corrections ordered by the board of appeals; and that in counties containing 250,000, or more, inhabitants, the county assessor should sit on the first Monday of June and from day to day thereafter for the purpose of revising the assessment of real and personal property, and finish such revision on or before July 1. The section as amended in 1932 is substantially the same as now in force.

In 1932, section 34 was amended to substitute the board of appeals for the board of review in counties containing 250,000, or more, inhabitants, and to provide that the board of appeals can act only upon application of a tax-payer and not upon its own motion. Otherwise the section is substantially the same as originally enacted.

In 1932, section 35 was amended to apply only to counties containing less than 250,000 inhabitants, and eight new sections designated as 35*a*, 35*b*, 35*c*, 35*d*, 35*e*, 35*f*, 35*g*, and 35*h*, were added to the Revenue act of 1898, as amended, to apply to the board of appeals in counties containing 250,000, or more, inhabitants. Section 35*a* provides that in such counties, "the board of appeals *in any year* shall (*a*) on complaint that any property is over-assessed or under-assessed, or is exempt, review and order such assessment corrected; (*b*) order the county assessor to correct any mistake or error (other than mistakes or errors of judgment as to the valuation of any real or personal property) in the manner provided in section 35*c* of this act; and (*c*) direct the county assessor to assess all property subject to assessment which he has not assessed for any reason and enter the same upon the assessment books and to list and

assess all property, real or personal, that has been omitted in the assessment of any year," etc. Section 35$a$ further provides that the board of appeals shall hear complaints and revise assessments of any particular parcel of real property or the assessment of personal property of any person or corporation mentioned or described in a complaint filed with the board and conforming to the requirements of section 35$b$ of the act, and shall make revisions in no other cases. The remaining alphabetical divisions of section 35 relate to procedure in matters not here in issue.

So far as the power of the board of appeals to change assessments during the years intervening the years of the quadrennial assessment is concerned, the Revenue act of 1898, as amended in 1932, does not materially differ from the act in force when the *St. Louis Bridge Co. case* was decided. Nothing is found in any provision of the act now in force indicating any intention by the legislature to restrict the power of the board of appeals to consider complaints that particular property is over-assessed or under-assessed to years in which the quadrennial assessment is made or to limit the board, during a year other than that in which a quadrennial assessment is made, to a consideration of only those cases in which the assessor has changed assessments during that year. On the contrary, section 34 of the act, as amended in 1932, requires the board of appeals to meet on or before a specified date in each year for the purpose of revising the assessment as provided for in the act and provides that at such meeting the board of appeals, upon complaint filed by a tax-payer as prescribed in section 35$b$, "may revise the entire assessment of any tax-payer or any part thereof and correct the same as shall appear to them to be just."

The most important changes made by the amendments in 1932, so far as the powers of the board of appeals are concerned, were (1) to take away from the board the power, of its own motion, to increase, reduce or otherwise adjust

assessments, and to limit its actions in that regard to property described in complaints filed with it by tax-payers, and to property described in certificates of mistakes or errors, other than errors of judgment as to valuation, delivered to it by the assessor at any time before the board is required, by section 38, to complete its work; and (2) to take away from the board the power to note the changes made by it in the valuations of real estate on the assessment lists turned over to it by the board of assessors, but, in lieu thereof, there was vested in the board of appeals the power to require the county assessor to note all such changes in the valuations of real estate on such assesment lists.

There is nothing in any of the provisions of the act indicating that the change in name from board of review to board of appeals was intended to limit the power of the board of appeals, in a year other than the year of the quadrennial assessment, to a consideration of only such assessments as have been modified by the assessor during such year. Both names indicate that the board is established to review assessments made by the assessor and that was the function of the board of review and is likewise the function of the board of appeals. All assessments of real estate are first made by the assessor during the year of the quadrennial assessment. There is no provision in the act as now in force, or in the act as in force after the 1905 amendment, limiting such review of assessments to the year in which the particular assessment complained of was made by the assessor, but, as shown by the decision in *People* v. *St. Louis Bridge Co. supra,* the power of the board to review an assessment made by the assessor for a quadrennial period continues throughout the quadrennial period. Section 32a specifically provides that the board of appeals shall be the successor of the board of review in counties containing 250,000, or more, inhabitants, and in *People* v. *Board of Review,* 352 Ill. 157, we held that the board of appeals, being the successor of the board of review, was

required to act in accordance with a writ of *mandamus*, issued against the board of review. In *People* v. *St. Louis Merchants Bridge Co.* 282 Ill. 408, following our decision in the *St. Louis Bridge Co. case*, we again held that the board of review, after the assessments had been made at the quadrennial session in 1915, had the power, upon due notice to the party assessed, to change the assessment even though there was no showing of a change in the value of the property by reason of alterations or additions. See, also, *People* v. *Keogh*, 306 Ill. 323, and *People* v. *Goldberg*, 332 id. 346.

There is no basis for the contention that the power and jurisdiction of the board of appeals to order an assessment corrected on complaint that any property is over-assessed or under-assessed is limited to years in which the quadrennial assessments are made, unless the assessor has changed the assessment for some of the causes specified in sections 12 and 14. Those sections were not, under any of the decisions of this court, limitations on the power and jurisdiction of the board of review to change assessments in any year of the quadrennial period after the 1905 amendments. The reasons given by the court in the *St. Louis Bridge Co. case* for holding that the board of review was not limited by sections 12 and 14 apply with equal force to the board of appeals acting under the statutes now in force.

It is conceded by all parties, and indeed cannot be denied, that boards of review in the other counties of this State have the authority which appellee says the act withholds from the board of appeals of Cook county. In the absence of a clearly expressed legislative intention to thus discriminate between the reviewing boards and the taxpayers subject to their jurisdiction, no such intention should be read into the act. On the contrary, the legislation sufficiently discloses a purpose to give the board of appeals the same authority in this respect as that conferred upon the boards of review.

We are of the opinion that the board of appeals, in any year intervening the years of the quadrennial assessments, has the power and jurisdiction, upon the filing of a complaint by a tax-payer within the time and in the manner prescribed by statute, to order the assessor to increase or decrease the assessment as it then stands against such property, provided notice of hearing and opportunity to be heard on such complaint has been given to the person or corporation affected and to the assessor, and that such increase or decrease may be ordered if the board of appeals finds that the assessment complained of is, for any reason, not a just assessment.

The judgment of the county court is reversed.

*Judgment reversed.*